TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS
California Bar No. 101281
Assistant United States Attorney
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2569
     Facsimile: (213) 894-0142
     E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>$178,000.00 IN U.S. CURRENCY,<br><br>　　　　Defendant. | Case No. 2:21-CV-01427<br><br>COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) and (C) and 21 U.S.C. § 881(a)(6)<br><br>[DEA] |

　　　Plaintiff United States of America brings this claim against defendant $178,000.00 In U.S. Currency, and alleges as follows:

JURISDICTION AND VENUE

　　　1.　Plaintiff United States of America brings this <u>in rem</u> forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and 21 U.S.C. § 881(a)(6).

/ / /

2.   This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4.   The plaintiff in this action is the United States of America.

5.   The defendant in this action is $178,000.00 In U.S. Currency (the "defendant currency") seized on or about August 26, 2020 and consisting of (i) $130,000.00 seized by law enforcement officers while present at Cigar Aroma Shop, 200 East Garvey Avenue, Suite 103 in Monterey Park, California; (ii) $30,200.00 seized by law enforcement officers during the execution of a State of California search warrant at JiaJia Wang and/or Xiaomin Sun's Montebello, California residence;[1] and (iii) $17,800.00 seized by law enforcement officers during the execution of a State of California search warrant at Xiaomin Sun's Hacienda Heights, California residence.

6.   The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7.   The interests of Xiaomin Sun and JiaJia Wang may be adversely affected by these proceedings.

/ / /

/ / /

---

[1] Pursuant to Local Rule 5.2-1, only the city and state of residence addresses are set forth in this Complaint.

BASIS FOR FORFEITURE

Background Regarding The Illegality Of Engaging In Money Transmitting Without A License

8. 18 U.S.C. § 1960 makes it a crime to knowingly conduct, control, manage, supervise, direct or own all or part of an unlicensed money transmitting business. In addition, 18 U.S.C. § 981(a)(1)(A) renders subject to forfeiture any property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, or any property traceable to such property.

9. An unlicensed money transmitting business is defined as one which affects interstate or foreign commerce in any manner or degree and (a) is operated without an appropriate license in a state, such as California, where such operation is punishable under state law, whether or not the transmitter knew that the operation was required to be licensed; (b) is not in compliance with the money transmitting business registration requirements under 31 U.S.C. § 5330 (which requires that money transmitting businesses be registered with the Secretary of the Treasury), or the regulations promulgated thereunder; or (c) otherwise involves the transportation or transmission of funds that are known by the transmitter to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity. Money transmitting is defined as transferring funds on behalf of the public by any and all means including, but not limited to transfers within the United States or to locations abroad by wire, check, draft, facsimile or courier.

/ / /

10. As set forth below, the defendant currency was transmitted or attempted to be transmitted on behalf of a third party by Xiaomin Sun and/or JiaJia Wang. However, neither Xiaomin Sun nor JiaJia Wang during the time of the operative events set forth below were licensed by the State of California as an authorized money transmitting business or registered, nor were either of them authorized to function as a money transmitting business under federal law by the Secretary of the Treasury.

11. Nevertheless, Xiaomin Sun and/or JiaJia Wang knowingly conducted, controlled, managed, supervised, directed and owned an unlicensed money transmitting business affecting interstate and foreign commerce: (a) having failed to obtain an appropriate money transmitting license under California Finance Code § 2030; (b) having failed to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330, and the regulations prescribed thereunder; and (c) having knowingly transported or transmitted funds derived from a criminal offense or which were intended to be used to promote or support unlawful activity.

Background Of The Money Laundering Scheme

12. Beginning in approximately February 2019, law enforcement officers have investigated a Chinese money laundering scheme, which involves the transmission of U.S. currency derived from drug sales in the United States to bank accounts in China controlled by Mexico or China based drug trafficking/money laundering organizations. After the transfer to China bank accounts, the drug trafficking/money laundering

4

1  organizations often transfer the funds to Mexico in multiple
2  ways, including paying Chinese export manufacturers from the
3  China bank accounts for durable goods that are shipped to Mexico
4  to the drug trafficking organizations' clients.  By avoiding
5  traditional banking channels for the transfer or physically
6  transporting large sums of currency from one country to another,
7  the drug trafficking/money laundering organization seek to avoid
8  the financial institution and law enforcement scrutiny that
9  would otherwise result from their activity and potentially
10 result in the seizure of their ill-gotten gains.
11       13.  One method of transporting drug proceeds from the
12 United States to China consisted of the following.  Persons
13 living in China (_i.e._, Chinese nationals) will purchase U.S.
14 Currency, which funds are narcotic proceeds that are collected
15 from drug purchasers and delivered in the United States to the
16 China-based purchaser.  Once the U.S. Currency is physically
17 delivered, the China-based U.S. Currency purchaser transfers an
18 approximately equivalent amount in Renminbi, which is also known
19 as "RMB" and is the official currency of the People's Republic
20 of China, from the China-based purchaser's bank account in China
21 to an account in China designated by the drug trafficking/money
22 laundering organization.  As a result, U.S. Currency is
23 converted to Chinese currency on deposit in bank accounts in
24 China, and the only bank transaction involves a transfer between
25 accounts in China, which would normally avoid scrutiny by the
26 Chinese government regarding the currency's provenance.  The
27 scheme often involves drug trafficking/money laundering
28 organizations locating China-based persons to purchase U.S.

Currency (which is in actuality drug proceeds) by posting advertisements in Chinese language internet bulletin boards and WeChat forums.

Xiaomin Sun and JiaJia Wang's Communications With Undercover Police Officer

14. On August 17, 2020, law enforcement officers located at www.chinesinla.com an on-line advertisement for the sale of U.S. currency in exchange for Renminbi, which is the official currency of the People's Republic of China and is also known as "RMB." The online advertisement listed (626) 202-3322 as the contact number and provided "I need RMB starting $50000 US."

15. On August 18, 2020, a law enforcement officer acting in an undercover capacity and fluent in Mandarin Chinese (the "UC") began communicating in Chinese with another person, via text messages sent to the above-referenced cellular telephone number, and messaging sent using the WeChat app. The individual with whom the UC was communicating used the WeChat handle "QQ254690030" and the (626) 202-3322 cellular telephone number. QQ254690030 introduced the UC via WeChat to a person that QQ254690030 stated used the WeChat handle "Miss_wangjiajia123."

16. Miss_wangjiajia123 then communicated with the UC, and told the UC that Miss_wangjiajia123's superior, an individual Miss_wangjiajia123 identified as "Simon," would be able to sell bulk currency to the UC in exchange for intra-China bank transfers. In addition, Miss_wangjiajia123 told the UC that Simon used the WeChat handle "voyagerusa" and cellular telephone number (626) 228-8636. As a result of database checks, law

6

enforcement officers determined that Miss_wangjiajia123 was JiaJia Wang and "Simon" was Xiaomin Sun.

17. Initially, the UC asked Miss_wangjiajia123 (i.e., JiaJia Wang) for 380,000 RMB (which was approximately $55,000.00 in U.S. currency) to be exchanged for U.S. currency, and Miss_wangjiajia123/JiaJia Wang stated that 380,000 RMB was not too much for Miss_wangjiajia123/JiaJia Wang to exchange. In addition, Miss_wangjiajia123/JiaJia Wang stated that they (meaning JiaJia Wang and Xiaomin Sun) only conducted exchanges for a minimum of $50,000.00 in cash.

18. Ultimately, during the Miss_wangjiajia123/JiaJia Wang-UC communications, Miss_wangjiajia123/JiaJia Wang agreed to exchange $130,000.00 in U.S. Currency. In addition, Miss_wangjiajia123/JiaJia Wang agreed during these communications to meet at approximately 4:00 p.m. in Monterey Park, California, at which time JiaJia Wang and/or Xiaomin Sun would provide the U.S. Currency to the UC and the parties would conduct the U.S. currency-RMB exchange transaction.

<u>Database, Records Checks And Other Analysis Identify Various Businesses And Vehicles Owned by Xiaomin Sun or JiaJia Wang</u>

19. Based on database and records checks and review of a corporation statement of interest, officers determined that cellular telephone number (626) 228-8636 belonged to Xiaomin Sun, Xiaomin Sun's California driver license listed the Cigar Aroma shop at 200 East Garvey Avenue # 103 as Xiaomin Sun's address and Xiaomin Sun owned a business called West Union Travel located at a Montebello residence address (which is the same residence address where officers seized $30,200.00 of the

Case 2:21-cv-01427   Document 1   Filed 02/17/21   Page 8 of 18   Page ID #:8

defendant currency, as noted in paragraph 5 above).  In addition, officers learned from database checks of the Montebello residence that JiaJia Wang resided at that location (and the Miss_wangjiajia123 WeChat handle matched JiaJia Wang's name).

20. Also, a records check of JiaJia Wang's California driver license revealed to law enforcement officers that JiaJia Wang's license listed the Cigar Aroma business as her primary residence and the West Union Travel Montebello residence address as her secondary address.  Officers also determined that JiaJia Wang had two vehicles registered to her name with the Montebello residence address, consisting of a 2020 Lexus NX300 SUV and a 2020 Lexus sedan.

Officers Make Contact With Xiaomin Sun and JiaJia Wang On August 26, 2020

21. The following events occurred on August 26, 2020.  At approximately 1:00 p.m., officers saw both Lexus vehicles parked in front of Cigar Aroma, and from and after 1:00 p.m. saw Xiaomin Sun and JiaJia Wang coming to and going from the business as though they worked there together.  At approximately 3:30 p.m., a confidential informant was in contact with Xiaomin Sun and requested Xiaomin Sun to conduct a money transfer for $50,000.00 one hour later (*i.e.*, at 4:30 p.m.).  In response, Xiaomin Sun agreed to conduct the $50,000.00 transfer, which led officers to believe that Xiaomin Sun had more than the $130,000 in Xiaomin Sun's possession (namely, approximately $180,000 [*i.e.*, $130,000.00 + $50,000.00] and close to the amount of the

8

defendant $178,000.00 in U.S. Currency) that was to be used to conduct the $130,000 money transfer with the UC.

22. At approximately 3:45 p.m., the UC sent a text to Xiaomin Sun advising that the UC was at a Bank of America branch on South Atlantic Boulevard in Monterey Park. In response, Xiaomin Sun requested the UC to come to Cigar Aroma at 200 E. Garvey Avenue # 103 to conduct the transaction.

23. Then, officers approached Cigar Aroma and saw JiaJia Wang exit the business and enter the 2020 Lexus NX300 SUV. Officers pulled up behind the vehicle and contacted JiaJia Wong. As officers were having JiaJia Wang exit her vehicle, officers saw Xiaomin Sun standing at the front glass door to Cigar Aroma about 15 feet away, and motioned and yelled at Xiaomin Sun to step outside. However, Xiaomin Sun disobeyed officers' instruction, choosing instead to walk away and out of officers' sight inside the suite. When officers started to open the door to the Cigar Aroma business, officers saw Xiaomin Sun emerge from an office-style side room in the suite.

24. Officers then spoke with Xiaomin Sun, who told officers the following. JiaJia Wang owned Cigar Aroma. Xiaomin Sun had previously had a sexual relationship with JiaJia Wang and had resided with her at the Montebello residence, but Xiaomin Sun had moved out in June 2020 and was currently living in Hacienda Heights. When officers asked Xiaomin Sun about items Xiaomin Sun had at his Hacienda Heights residence, Xiaomin Sun stated that he had two guns and about $100,000.00 in U.S. currency at that location. In addition, when officers asked

9

Xiaomin Sun how much money was at Cigar Aroma, Xiaomin Sun replied $130,000.00.

25. When officers then spoke with JiaJia Wang, she told officers the following. JiaJia Wang owned Cigar Aroma. Xiaomin Sun was JiaJia Wang's ex-boyfriend, and Xiaomin Sun neither owned nor worked at Cigar Aroma and was just a friend who had come by JiaJia Wang's business. JiaJia Wang did not know why Xiaomin Sun had come by her business that day. In addition, JiaJia Wang stated that that she had only $400.00 in the store and did not know whether Xiaomin Sun had brought any money into her business.

Officers' Seizure of $130,000.00 And Loaded Firearm at Cigar Aroma and Further Discussions with Xiaomin Sun and JiaJia Wang

26. Officers searched Cigar Aroma and found on the floor under the couch of the office-style side room from which Xiaomin Sun had emerged after disobeying officers' instructions to exit the suite a firearm with six rounds in the magazine and none in the chamber. It is likely that Xiaomin Sun placed the firearm under the couch after disobeying officers' instructions in order to hide the firearm from officers, and had intended to carry the firearm for protection when conducting the $130,000.00 money transfer with a person (*i.e.*, the UC) who was a stranger to Xiaomin Sun.

27. In addition, officers found $130,000.00 (*i.e.*, part of the defendant currency) inside Cigar Aroma, including $50,000.00 situated in a Louis Vuitton bag, $50,000.00 in the top shelf of a refrigerator and $30,000.00 hidden in a P.O. box at the business. Officers also found in the office-style side room on

a shelf a money counter, which is an indicator of drug trafficking as well as engaging in a money transfer business. The money counter was still on when officers found it, and was counting $100 dollar bills. The majority of the $130,000.00 found by officers was in $100 dollar bills.

28. Officers seized the $30,000.00 mentioned above last, after first seizing the $100,000.00 (i.e., the $50,000.00 in the Louis Vuitton bag and $50,000 in the refrigerator shelf). After officers seized the $100,000.00, Xiaomin Sun stated that there was no other currency at the business. However, officers then found the $30,000.00 in the P.O. box. In addition, while Xiaomin Sun had previously told officers that he had about $100,000.00 at his Hacienda residence, Xiaomin Sun changed his story and now told offices that he had only about $15,000.00 at the residence.

29. Also, officers found at Cigar Aroma Xiaomin Sun's tax return for his business West Union Auto Travel, Inc. That tax return reflected that the company's 2019 gross receipts totaled only $7,800.00, the company's deductions totaled almost $14,000.00, and the company therefore had a negative net income of $6,152.00 for 2019. Accordingly, Xiaomin Sun lacked sufficient sources of legal income to support his acquisition and possession of the seized funds.

30. Officers then spoke with JiaJia Wang again, who stated that she had only approximately $8,000.00 in cash at her Montebello residence. In addition, JiaJia Wang stated that she had owned Cigar Aroma since December 2019, and the business consisted of renting out P.O. boxes and selling various items

that came from China. As set forth above, the 2020 Lexus NX300 SUV and 2020 Lexus sedan were registered to JiaJia Wang. However, JiaJia Wang told officers that while the Lexus NX300 SUV was hers, the 2020 Lexus sedan belonged to Xiaomin Sun. When officers searched the 2020 Lexus sedan, officers found in the glovebox another loaded magazine for Xiaomin Sun's firearm that offices had found hidden underneath the couch.

31. Officers spoke with Xiaomin Sun again, who stated that he used JiaJia Wang's business as a front to conduct money transfers in order to give the impression that he had credible access to U.S. currency to sell to customers and to avoid being robbed. In addition, Xiaomin Sun claimed that this was the first time he had conducted a money transfer. However, officers found on Xiaomin Sun's cellular telephone several pictures of China-to-China bank transfer confirmations and other information reflecting that Xiaomin Sun had conducted three or four money transfers on August 25, 2020 (<u>i.e.</u>, the preceding day) alone.

<u>Officers Seize The Remaining $48,000.00 In Defendant Currency From The Xiaomin Sun and JiaJia Wang Residences</u>

32. When officers executed a State of California search warrant at JiaJia Wang's Montebello, California residence officers found $30,200.00 (<u>i.e.</u>, part of the defendant currency) inside a safe. Officers also found in the safe information pertaining to Xiaomin Sun, namely a Chinese passport and Social Security card for him, and the funds were all in $100 dollar bills, or the same denomination as the majority of the $130,000.00 found at Cigar Aroma that Xiaomin Sun claimed was his. In addition, officers found an additional large sum of

currency at the residence but, unlike the $30,200.00, those funds were in mixed denominations (i.e., one, five, ten and twenty dollar bills), JiaJia Wang had receipts for the funds and JiaJia Wang claimed the currency was derived from selling items at her business Cigar Aroma. Officers did not seize this currency.

33. Officers also executed a State of California search warrant at Xiaomin Sun's Hacienda heights residence and found inside a wooden box in the office $17,800.00 in U.S. Currency (i.e., the remainder of the defendant currency). Also, Xiaomin Sun admitted to officers, as discussed in paragraph 21 above, that he had scheduled another $50,000.00 money transfer transaction for the same day as the $130,000.00 transaction, and Xiaomin Sun had another customer scheduled to come by to purchase the $50,000.00 in U.S. currency. However, when officers asked Xiaomin Sun to identify this customer, Xiaomin Sun declined to do so.

34. Officers had a trained, state-certified narcotic detection canine sniff the defendant currency, and the canine alerted, which signifies that the funds had recently been in close proximity with narcotics. As of the time of the alert, the canine had received over 400 hours of training during which time the canine successfully found training aids that contained actual narcotics. The canine used to sniff the defendant currency alerts to the scent of narcotics for which the canine is trained. In addition, the canine has also been trained with general currency in circulation, in order to make sure that the canine does not alert to the odor of currency but instead to the

presence of narcotics on currency. On or about June 21, 2017, the canine and canine handler were certified for use as a team, and the canine has successfully passed the tests for the canine's recertification. As of the August 26, 2020 alert, the canine had been successfully used in multiple cases in which narcotics had been found, and was responsible in assisting in the seizure of over 800 pounds of narcotics and over $4.5 million in narcotic proceeds.

## FIRST CLAIM FOR RELIEF

35. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

36. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking, was intended to be used in one or more exchanges for a controlled substance or listed chemical, or was used or intended to be used to facilitate a controlled substance or listed chemical violation, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

37. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

38. Based on the above, plaintiff alleges that the defendant currency constitutes or is derived from proceeds traceable to a controlled substance or listed chemical violation, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D). The defendant currency is

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### THIRD CLAIM FOR RELIEF

39. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

40. Based on the above, plaintiff alleges that the defendant currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation. The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

### FOURTH CLAIM FOR RELIEF

41. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

42. Based on the above, plaintiff alleges that the defendant currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation. The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

### FIFTH CLAIM FOR RELIEF

43. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

44. Based on the above, plaintiff alleges that the defendant currency constitutes or is derived from proceeds

traceable to violations of 18 U.S.C. § 1960 (illegal money transmitting business), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### SIXTH CLAIM FOR RELIEF

44. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

45. Based on the above, plaintiff alleges that the defendant currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. § 1960 (illegal money transmitting business). The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

### SEVENTH CLAIM FOR RELIEF

46. Plaintiff incorporates the allegations of paragraphs 1-34 above as though fully set forth herein.

47. Based on the above, plaintiff alleges that the defendant currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. § 1960 (illegal money transmitting business). The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

/ / /

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: February 17, 2021

TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United states Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

/s/ Victor A. Rodgers
_____
VICTOR A. RODGERS
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## VERIFICATION

I, Darron Lee, hereby declare that:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 16, 2021 at San Diego, California.

_____
Darron Lee